```
| 82   61 |
|104  359 |
```

JOANNA SPRY, Guardian, Appellant, v.. HUGH WILLIAMS, Guardian, Appellee. ·

Benefit Society : CERTIFICATE : BENEFICIARY : SUBSEQUENT BIRTH OF CHILDREN: EQUITY.   A widower obtained a benefit certificate in the Ancient Order of United Workmen, wherein his three children were designated by name as the beneficiaries.  Subsequently, he remarried, and after his death a child was born as the fruit of such marriage.  Held, that said certificate was not at variance with a by-law of said society, providing that its object should be " to afford financial aid and benefit to the widows, orphans and heirs or devisees of deceased members ;" and the jurisdiction of a court of equity could not be invoked to extend the provisions of the contract, represented by the certificate, beyond its terms, so as to include a child subsequently born.

*Appeal from Warren District Court.*—HON. J. H. HENDERSON, Judge.

FRIDAY, JANUARY 30, 1891.

THE petition shows that John F. Meyer, in 1885, became a member of the Ancient Order of United Workmen and received a certificate therefrom, by the terms of which his beneficiaries, named therein, were to receive a certain amount at his death.  The designation of beneficiaries is as follows :   "Do promise and agree to pay Ulysses S., William J. and Etta Meyer, his children, or the legal representative of the said John F. Meyer, after due notice," etc.  At the

time of obtaining the certificate, John F. Meyer had no wife, and no other children than those named. John F. Meyer died in 1886, after having again married. After his death, as the fruits of his second marriage, Jessie Fay Meyer was born. The plaintiff is the guardian of Jessie Fay Meyer, and the defendant that of the children named in the certificate. The society, in full discharge of its obligation in the certificate, paid to defendant the sum of seventeen hundred and two dollars and sixty-five cents. This action is to require the defendant to pay to the plaintiff, for the use of Jessie Fay Meyer, one-fourth of the avails of the certificate. There was a demurrer to the petition on the ground that on its face it showed that the wards of the defendant were the only persons entitled to receive the money. The district court sustained the demurrer, and gave judgment thereon, from which the plaintiff appealed.—*Affirmed.*

*Morgan & Evans*, for appellant.

*Williams & Powell*, for appellee.

GRANGER, J.—The point first made in argument, and probably chiefly relied upon, is that, where there is a "variance" between the laws of the society and the certificate, the former must govern. The correctness of this proposition we need not discuss. We may more profitably inquire if there is such a variance. We should keep in view in our reasoning that the merit of appellant's contention is that, as a result of sustaining the demurrer by the district court, Jessie Fay ⸱ Meyer is denied an interest in her father's estate, as, barring the certificate in question, he left no estate, and much stress is placed on the equitable thought involved.

The articles of incorporation of the society provide: "*Second.* The business and object for which said society is formed is to provide, secure and give financial aid to the widows, children, heirs-at-law and legatees of deceased members thereof, in accordance with

the rules, regulations and by-laws of said society." A provision of the by-laws is as follows: "The business and object of this society shall be to afford financial aid and benefit to the widows, orphans and heirs or devisees of deceased members." It has been often held, and the rule is not disputed in this case, that a member of such a society may receive a certificate designed only for the benefit of one of such classes, to the exclusion of the others, as for the widow, omitting the children, or for the children, omitting the widow, or for one of several children, omitting the others. It is a fact, then, that the member receiving the certificate may determine who of the classes designated by the law as beneficiaries shall be the beneficiary in his particular case, and the fact that he thereby does injustice to others will not defeat his purpose. The equitable thought then is available only in cases of doubtful interpretation, when it should have liberal influence, presuming the party in making such provisions designed to act justly.

At the time the certificate was taken, John F. Meyer had but the three children named in the certificate, and was then unmarried. At that time his children named were the only ones dependent upon him, and it could not well be said that he did not then conform by his certificate with the full spirit of the law. Had John F. Meyer died before his marriage with the mother of Jessie Fay Meyer, no question could well have arisen as to the proper beneficiaries, or as to his intent. The transaction giving rise to such a certificate is a contract between the member receiving the certificate, and the society. *Felix v. A. O. U. W.*, 31 Kan. 81; 1 Pac. Rep. 281. The contract at its inception fixes the obligation of the society for payment, the amount to be paid by the member for the benefit, and who is or are to be the beneficiaries. As a part of the contract, the society was under obligations to pay only the beneficiaries named in the certificate. The contract provided for changing the beneficiaries, but only at the instance of John F. Meyer, and then by a return of the certificate and receiving a

new one, with the new beneficiary named therein. By-Laws of Society, art. 8, sec. 2. Now, if we are to hold that, because of the birth of Jessie Fay Meyer after the certificate issued, and after the death of her father, she is a beneficiary, the effect of the holding is to permit the law to make a contract never intended by the parties. At the time of John F. Meyer's death, the obligation of the society became fixed, and Jessie Fay was then unborn, and it could not then be said that she was a beneficiary in the certificate. If the certificate had then been paid, could Jessie Fay, after her birth, have had a right of action for any part of the proceeds? Certainly not.

It is said that it could not have been the intention of Meyer to have made provision for a part of his children only. Without admitting the fact, it may be said that he did not make such a provision. He made provision for all he then had, and it is the intent of that time that is to govern. There is no support for the claim that there is a variance between the laws of the society and the certificate. The certificate provides that the benefit shall be paid to "Ulysses S., William J. and Etta Meyer, his children, or the legal representative of the said John F. Meyer." No claim is made that the payment should have been made to the legal representative. The words "his children" refer to those named, and cannot properly be construed to mean or embrace others yet unborn. On so plain a proposition there should be no dispute, nor can equitable considerations overrule an intent so manifest and legal. After his marriage with the mother of Jessie Fay Meyer, he had the opportunity to so change his certificate as to extend its benefits to his widow and unborn child, which he did not do. And it is equally as unreasonable and inequitable to omit from its benefits his widow as her child. He knew the situation, and we should assume that he had reasons for not making the change. The record does not disclose what property rights the widow possessed. They may be abundant for her and her child, who would inherit from

her, while his children by a former marriage would not. If the court should attempt, on the face of this record, to make the conduct of Meyer more equitable by creating a new beneficiary, it might defeat that which is absolutely just.

It is to some extent urged to us in argument, and our consideration of the case has led us to consider the analogy of the law as applicable to this case, and that governing the validity of wills, as the same rules of law often apply in determining the rights of parties under wills and beneficiary certificates. Appellant, in argument, quotes the following section of the Code : " Sec. 2334. Posthumous children unprovided for by the father's will shall inherit the same interest as though no will had been made." In *Alden v. Johnson*, 63 Iowa, 124, and cases there cited, this court held that the birth of a child to a testator subsequent to the making of the will, and before the death of the testator, would operate as an implied revocation of the will. Such rule is without application to the facts of this case. The purpose of this case is to extend the provisions of the certificate or contract beyond its terms, and include another as beneficiary. The law has never extended the provisions of a will to include one not specified as a legatee therein ; but, following the rules of the civil law as to presumptions, it revokes the will, and places the property of the estate under the direction of the law as to distribution. In such a case the revocation of the will takes effect before the death of the testator on the birth of the child. If we apply the rule to this case, the birth of the child, after the certificate issued, would operate to revoke it,—a result that no one would contend for. The proceeds of such a certificate are not a part of the estate but go directly to the beneficiary, except where payable to the estate. Bac. Ben. Soc., sec. 396 ; *Felix v. A. O. U. W.*, 31 Kan. 81. Appellant has cited a number of authorities wherein courts have construed certain expressions in certificates and wills, as that a bequest to the children of a testator means all his

children, though by different wives, and in some instances the term "children" has been held to include grandchildren; but there is no case that we have seen where it is held that a bequest or certificate in favor of children, naming them, is to be enlarged by construction, which is really what is asked in tl      case.

The judgment of the district court is AFFIRMED.